Argued and submitted December 13, 1994, reversed and remanded July 12, petition for review denied December 26, 1995 (322 Or 421)

STATE OF OREGON,
*Appellant,*

*v.*

LISA RENEE ERB,
*Respondent.*

(D9303559T, D9303560T; CA A81766)

899 P2d 716

Diane S. Lefkow, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Kenneth E. Kahn II argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant was charged with false application and false swearing relating to registration. ORS 803.375; ORS 803.385. The state appeals a pretrial order suppressing evidence. We reverse and remand.

On August 10, 1992, Officer Larson was involved in the arrest of defendant for driving under the influence of intoxicants (DUII). At that time, defendant was cited for DUII and felony driving while suspended. Her car was impounded and towed, and "zebra tags" were put on her license plates. At the time of the arrest, defendant told Larson that he could not stop her from driving and that she would buy other cars and continue to drive.

On August 11, Larson went to defendant's apartment complex for the purpose of looking at her car. The parking lot for the apartment complex is located at the top of a steep driveway. The entrance to the driveway is located off of S.W. Condor, a public highway. Larson drove up the driveway and into the parking lot, which was about 60 percent full. He did not see any "private property" or "no trespassing" signs. The only sign that he noticed was posted at the entrance of the driveway and read "Residential Parking Only." He testified that he interpreted the sign to mean that only tenants could park in the lot, but that the premises were open to the public.

Upon entering the parking lot, Larson saw defendant's car and observed that the zebra sticker was no longer on the license plate. He got out of his car and stood close enough to defendant's car to see that a new 1994 "expiration sticker" had been affixed to the plate. He then wrote down the registration number of the new sticker. Based on his knowledge of defendant's driving record, he did not believe that she would have been eligible for the new sticker. Following his investigation, Larson contacted the Motor Vehicles Division, and defendant ultimately was cited for false application and false swearing relating to vehicle registration.

Defendant moved to suppress evidence obtained from Larson's investigation on the ground that Larson's actions constituted a search for which a warrant was necessary. The trial court granted the motion, explaining:

"I find that this is private property entitled to the same protections as a private driveway. The fact that it is a private driveway owned by several condominium owners does not make it any less private. The officer came on the property solely to collect evidence, not for any other purpose, and therefore I grant the motion."

■ The state appeals, arguing that the trial court erred in granting the motion to suppress. It first contends that the trial court erred in relying on the fact that Larson's sole purpose in entering the parking lot was to examine defendant's car, to reach the conclusion that his actions constituted an illegal search. The state is correct that Larson's motivation for entering the parking lot and observing defendant's car is not material to whether a search occurred. *See State v. McIntyre/Pereira*, 123 Or App 436, 442, 860 P2d 299 (1993), *rev den* 318 Or 351 (1994). As the Supreme Court explained in *State v. Ainsworth*, 310 Or 613, 621, 801 P2d 749 (1990):

"Article I, section 9, prohibits certain governmental action, not certain governmental states of mind. The Oregon Constitution does not require an inquiry into the observing officer's thoughts to determine whether the officer's conduct unconstitutionally violates a defendant's Article I, section 9, rights."

Accordingly, the trial court's reliance on Larson's motivation was improper.

■■ The state also argues that the trial court erred in concluding that, because the parking lot was on private property, it necessarily follows that the entry by the police officer constituted an unlawful intrusion on defendant's privacy interests protected by Article I, section 9.[1] Under Article I, section 9, a search occurs when the police invade a person's protected privacy interests. *State v. Nagel*, 320 Or 24, 29, 880 P2d 451 (1994). However, the question of whether a person's privacy interests are subject to constitutional protection is not necessarily determined by whether the police conduct takes place on private or public property. *State v. Dixson/ Digby*, 307 Or 195, 211, 766 P2d 1015 (1988). Rather, the test

---

[1] Article I, section 9, of the Oregon Constitution, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

of whether a particular interest is protected under Article I, section 9, *i.e.*, whether police conduct is a search, is an objective one in which we must decide whether the police action involved "would significantly impair an individual's interest in freedom from scrutiny, *i.e.*, his privacy." *State v. Wacker*, 317 Or 419, 425, 856 P2d 1029 (1993) (citation omitted); *see also Nagel*, 320 Or at 29.

■ Whether a police officer's entry onto private property constitutes an unlawful intrusion depends, in part, on where on the property the entry occurs. It is undisputed that Article I, section 9, protects a privacy interest in the curtilage of a person's dwelling. *State v. Gabbard*, 129 Or App 122, 126, 877 P2d 1217 (1994). Absent express or implied consent[2] by the owner or resident, any entry into the curtilage constitutes trespass and, thus, is an unlawful intrusion. *McIntyre/ Pereira*, 123 Or App at 439. As to that portion of the property that is outside the curtilage of a dwelling, an individual may also have a constitutionally protected privacy interest, but only to the extent that the person manifests "an intention to exclude the public by erecting barriers to entry, such as fences or by posting signs." *Dixson/Digby*, 307 Or at 211. In determining whether a person has manifested an intent to exclude the public from such areas, we must consider all of the surrounding circumstances. *McIntyre/Pereira*, 123 Or App at 440.

■ In this case, the parties agree that, regardless of whether the parking lot is private property, it is not part of the curtilage of defendant's dwelling. The state argues that the parking lot is not private, but that even assuming the property is private and that defendant, as a resident, can assert a privacy interest in the property, Larson's entry into the lot was lawful because neither defendant nor the other residents or owners of the complex exhibited an intent to exclude the public from entering.

---

[2] A person is deemed to have impliedly consented to visitors going to the front door of the residence, provided that the person has not manifested an intent to exclude such visitors. *State v. Gabbard*, 129 Or App 122, 127, 877 P2d 1217 (1994); *see also State v. Glines*, 134 Or App 21, 894 P2d 516 (1995) (where there was no objective evidence that the defendant manifested an intent to exclude the public from seeking to contact him at the side door, defendant impliedly permitted casual visitors to contact him there).

Defendant asserts that an intent to exclude *was* manifested. She relies on two facts to support that position — the somewhat isolated location of the parking lot, and the "Residential Parking Only" sign posted at the entrance of the driveway. With respect to the location of the parking lot, defendant argues:

> "The location of the privately owned parking lot formed a natural barrier to non-resident observations: it was located above the street on a plateau or cliff. Officer Larson testified that only when he went up to the parking lot did he see Defendant's car. The steepness of the incline and length of the driveway, approximately 200'-250', formed a natural barrier as well. Because the driveway was steep and long, the parking lot was more difficult to reach. These factors make the driveway and parking lot more private than, say, on-street parking or even a short, flat driveway next to the average family home."

However, absent evidence that public access to the driveway leading to the parking lot was somehow limited, the fact that the lot was somewhat hard to get to and a bit isolated does not provide objective evidence of an intent to exclude the public from the parking lot. *See Dixson/Digby*, 307 Or at 211 (vegetation or topographical barriers "do not necessarily indicate the owner's intention that the property be kept private").

We also do not agree that the "Residential Parking Only" sign provides objective evidence of an intent to exclude the public from the parking lot for all purposes. A reasonable visitor to the lot would not read the sign as precluding any entry into the area; rather, it simply advises visitors that *parking* is for residential purposes, which might or might not include visitors to the residences.[3] There is nothing to suggest, for instance, that visitors cannot walk or ride bicycles up the driveway and into the parking lot. This is not unlike the circumstances in *Dixson/Digby*, in which the court held that "No Hunting" signs posted on the defendant's property advised persons that they were not to hunt on the property, but that the signs could not be read to manifest an intent to exclude all persons from the property entirely. 307 Or at 212.

---

[3] At the suppression hearing, Larson testified that S.W. Condor is a high density parking area and that only limited street parking is available for cars that do not have residential parking permits.

We conclude that the record shows an insufficient manifestation of an intent to exclude the public from the driveway and parking lot of defendant's apartment complex. Accordingly, we conclude that, under the circumstances, Larson's entry into the lot and observation of defendant's car did not significantly impair her freedom from scrutiny and, thus, did not invade a privacy interest protected by Article I, section 9.

■  Defendant also argues that Larson's conduct violated her Fourth Amendment rights. For the same reasons discussed above, we conclude that, because defendant could not have had a reasonable expectation of privacy in the parking lot, her federal constitutional rights were not violated. *See State v. Goude*, 49 Or App 721, 620 P2d 957 (1980), *rev den* 290 Or 651 (1981) (applying Fourth Amendment "reasonable expectation of privacy" test). The trial court erred in granting the motion to suppress.

Reversed and remanded.