Argued and submitted January 31, reversed and remanded October 9, 1996

## STATE OF OREGON,
*Appellant,*

*v.*

## MARK ALLEN MADDUX,
*Respondent.*

## (930075TC; CA A87834)

925 P2d 124

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Sally L. Avera, Public Defender, argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Defendant was arrested for driving while under the influence of intoxicants (DUII). ORS 183.010. Before trial, defendant moved to suppress the results of his field sobriety tests and all derivative evidence on the ground that both the initial stop and the scope of the officer's investigation were unlawful. The trial court denied that motion.[1] After that decision, but before trial, the Oregon Supreme Court held that field sobriety tests constitute a search under both Article I, section 9, of the Oregon Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994). Relying on *Nagel*, defendant filed a second motion to suppress on the grounds that the field sobriety tests constituted an unlawful search under the Oregon and United States Constitutions. The trial court granted that motion and excluded the field sobriety tests and all derivative evidence. The state appeals from that order. ORS 138.060(3). We reverse.

We summarize the facts from the court's findings and the uncontroverted testimony of the arresting officer. On April 2, 1993, sometime after midnight, Deputy Tiffany received a dispatch that two possible suspects in an attempted burglary had been seen in a blue car that had spun its tires as it left a parking lot. Tiffany spotted the car, followed it for four blocks without seeing any traffic infractions or bad driving, and then stopped it. After speaking with the occupants of the car, Tiffany decided that the driver and his passenger were not the purported burglars. However, Tiffany smelled alcohol and decided to investigate a possible DUII. Another officer, who had pulled in behind Tiffany, left after Tiffany told him that the people in the car were not the suspects.

After the other officer left, Tiffany asked defendant, the driver, if he had been drinking. Defendant said that he had had a couple of beers at a tavern. Tiffany then asked defendant for his license. Defendant found his wallet, but he passed his license twice before finding it, even though Tiffany

---

[1] The legality of the stop and the scope of the investigation are not before us on appeal.

could see it. Tiffany noticed that defendant's movements were slow and that his speech was measured, but not slurred. Tiffany then asked defendant if he would do some field sobriety tests. Defendant said "okay" and performed the tests without objection. When the tests were completed, Tiffany arrested defendant for DUII.

■ The trial court concluded that performance of the field sobriety tests constituted a search under *Nagel*. It then granted defendant's motion to suppress on the grounds that Tiffany lacked probable cause to search defendant[2] and that defendant's consent to the tests was not voluntary. The state assigns error to both rulings.

■ We begin with the state's contention that defendant's consent to perform the field sobriety tests was given voluntarily and, therefore, *Nagel* does not control the analysis here, because the defendant in *Nagel* was *compelled* to perform the tests. In *Nagel*, the Supreme Court held that a police officer had conducted a search within the meaning of Article I, section 9, when the officer "directed" the defendant to perform a series of field sobriety tests. 320 Or at 31. The court reasoned that, in administering the field sobriety tests, the officer "created a situation that exposed information about defendant that was otherwise not observable by either the officer or members of the general public and was, thus, private." *Id*. However, the court held that the search was reasonable, because it was justified by probable cause and exigent circumstances.

The *Nagel* court described the process by which the defendant's performance of the field sobriety tests was obtained as one in which the officer "directed" or "instructed" or "required" the defendant's performance of the tests. *Id*. at 30. In addition, the officer there advised the defendant, pursuant to ORS 813.135 and ORS 813.136, that if he refused to submit to the field sobriety tests, that " 'evidence of the

---

[2] To establish probable cause justifying the administration of field sobriety tests, the state must show that the officer subjectively believed that probable cause to arrest existed and that that belief was objectively reasonable. *Nagel*, 320 Or at 32. The trial court found that Tiffany lacked objectively reasonable grounds to arrest defendant, but made no findings regarding whether Tiffany subjectively believed that he had probable cause to arrest.

refusal or failure is admissible in any criminal or civil action or proceeding arising out of the allegation that you were driving under the influence of intoxicants.' " *Id.* at 26 n 1; *see also State v. Fish*, 321 Or 48, 893 P2d 1023 (1995) (performance or refusal to perform field sobriety tests is testimonial within the meaning of Article I, section 12, and requiring driver to choose between one of those two options under the implied consent statutes constitutes compelled self-incrimination). We agree with the state that the tests in *Nagel* were compelled, that the court had no occasion to consider the consent exception, and that nothing in *Nagel* forecloses the state's argument that a driver may consent in a constitutional sense to performance of the tests.

■ We first consider whether defendant's consent was valid under the Oregon Constitution. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (state constitutional claims are examined before federal constitutional claims). Under the consent exception to the warrant requirement, the state must show by a preponderance of the evidence that defendant voluntarily consented to the search, *i.e.*, to perform the tests. We are bound by the trial court's findings of historical fact if the findings are supported by the evidence. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991). However, we are not bound by the trial court's ultimate conclusion as to voluntariness. Instead, we assess "anew whether the facts suffice to meet constitutional standards." *Id.* In addressing voluntariness, we examine the totality of the circumstances to determine whether defendant's "consent was given by an act of free will or was the result of coercion, express or implied." *State v. Parker*, 317 Or 225, 230, 855 P2d 636 (1993).

The trial court's findings are not disputed. While defendant was "stopped" for investigative purposes not related to DUII, Tiffany smelled an odor of alcohol and asked defendant if he had been drinking. In response, defendant said that he had had a couple of beers. Tiffany observed that defendant's movements were slow, his speech was measured and that he had trouble finding his driver's license in his wallet. Tiffany then asked defendant if he would do some field sobriety tests. Defendant replied, "Okay," got out of his car and performed the tests. Defendant was not advised before the tests of his *Miranda* rights nor advised, pursuant to ORS

813.135 and ORS 813.136, of the consequences of refusing to take the tests.

The trial court concluded that defendant's consent was not voluntary, based on the difference it perceived between a police request to search a car or a house and a police request to perform field sobriety tests. The court described its perceived distinction:

> "I think that it is more likely that if there is a request to search by looking into something, that a person is more likely to know that they could refuse to do it, although the officers are not required to tell them that. * * * Based on the totality of the circumstances before the court, I don't find that performance of the field sobriety tests was consensual in a constitutional sense."

Defendant echoes that reasoning and argues that

> "the officer's request for participation in field sobriety tests was[,] under the specific circumstances of this case, reasonably interpreted as simply another direction, albeit a polite direction, by the officer which defendant would not reasonably have known he had a right to refuse."

We understand the court's conclusion, and defendant's argument, to be that defendant's decision to perform the tests was not an act of free will because defendant's lack of knowledge that the tests constitute a police search that he could refuse caused him to perceive the officer's request as a *command* that he was required to follow. We disagree with the court's reasoning.

■ A criminal suspect's knowledge or lack of knowledge of constitutional rights is but one factor to be considered in evaluating the totality of the circumstances. *State v. Flores*, 280 Or 273, 277-82, 570 P2d 965 (1977). We do not discern any reason to apply a different rule when the crime under investigation is DUII. Thus, to the extent the trial court considered defendant's knowledge of his constitutional rights " 'as the *sine qua non* of an effective consent,' " it erred. *Id.* at 278, *quoting Schneckloth v. Bustamonte*, 412 US 218, 227, 93 S Ct 2041, 36 L Ed 3d 854 (1973).

We now examine anew the totality of the circumstances surrounding defendant's consent to perform the field

sobriety tests. Tiffany "asked" defendant to perform the tests, and defendant agreed. Unlike the circumstances in *Nagel*, Tiffany did not advise defendant that he would suffer any consequences should he decline to perform the tests. In that regard, defendant, in a footnote in his brief, states that Tiffany's "failure to give warnings is a circumstance or factor which may be considered in assessing voluntariness of consent." Without more, it is difficult to determine the direction of that argument. In any event, from that statement we understand defendant to argue that Tiffany violated ORS 813.135 by failing to give the warnings contained therein, and that the violation of that statute should somehow weigh against the state in our examination of the totality of the circumstances.

The consequences of refusal described in ORS 813.135[3] were not intended to advise a driver of a right to refuse to perform field sobriety tests. Instead, the warnings were intended to inform a recalcitrant driver of the consequences of refusing to perform the tests in order to induce the driver to perform them. *See State v. Trenary*, 316 Or 172, 177-79, 850 P2d 356 (1993). However, the Oregon Constitution, as construed in *Nagel* and *Fish*, forbids compelling a driver to provide testimonial evidence through the compelled performance of field sobriety tests. Because a driver in Oregon now has an unfettered choice whether to perform the tests, an officer no longer has any statutory obligation or reason to recite to either a compliant or recalcitrant driver the warnings in ORS 813.135. Thus, although we agree that defendant's lack of knowledge of his constitutional rights is a factor that a court may consider in determining voluntariness, we do not agree that Tiffany's failure to inform defendant of the consequences of refusal described in ORS 813.135 should weigh against the state in the voluntariness equation.

Tiffany was under no obligation to advise defendant that he could decline the request to perform field sobriety tests. There is nothing in the trial court's findings or in the

---

[3] ORS 813.135 requires officers to inform drivers, before administering the tests, of the consequences of refusing to take the tests. ORS 813.136 provides that if a driver refuses to perform field sobriety tests, that refusal may be introduced against the driver in any civil or criminal action.

record that supports any conclusion other than that Tiffany's words to defendant were phrased as a simple request, not as an order, command or directive, and that defendant could only have perceived them in that manner. There simply was no coercion or compulsion, express or implied, in Tiffany's request. We therefore conclude that defendant voluntarily consented to perform the field sobriety tests and that defendant's performance of the tests did not violate Article I, section 9, of the Oregon Constitution.[4] We reach the same result under the federal constitution. The trial court erred in granting defendant's motion to suppress.

Reversed and remanded.

---

[4] Because we conclude that defendant voluntarily consented to perform the field sobriety tests, we need not reach the state's argument that Tiffany had probable cause to order defendant to perform the tests.