Argued and submitted November 19, 1997, reversed and remanded May 27, 1998

# STATE OF OREGON,
*Appellant,*

*v.*

# STUART CRAIG FINNEY,
*Respondent.*

(8434; CA A95981)

961 P2d 256

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

H. Richard Sause argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

The state appeals from an order granting defendant's motion to suppress evidence. ORS 138.060(3). We reverse.

At approximately 10:50 p.m. on June 14, 1996, Fairview Police Officer Aden saw a pickup truck turn, without signaling, out of a bar's parking lot onto Sandy Boulevard. Aden began following the pickup, pacing it at 56 mph in a 35-mph zone for two blocks. The pickup came to a full stop at an intersection and continued on another road. Because there was more light on that road, Aden turned on his patrol car's overhead lights to stop the pickup and cite the driver for the traffic infractions. Defendant, who was the driver of the pickup, did not immediately pull over. Instead, he continued another two blocks before turning into a driveway. He drove to the end of the driveway and stopped in front of a house.

At that point, both doors of the pickup opened. Defendant's passenger went into the house and defendant took a few steps toward the front of the truck, heading toward the house. Aden believed that defendant intended to follow the passenger inside. He called out to defendant and had to tell him twice to walk to the back of the pickup before defendant complied. Two other officers arrived in separate patrol cars. One parked behind Aden's patrol car and the other parked about 20 feet to one side of it. The two officers left their patrol cars' overhead lights on, got out of their cars and proceeded to watch the stop.

When defendant walked back to Aden, Aden asked him for his driver's license. Aden smelled an odor of alcohol. He asked defendant what he had had to drink and defendant replied, "three rum and cokes." Aden asked defendant to consent to perform field sobriety tests in order to determine whether he was "under the influence" or "OK to drive." Aden testified that, if defendant had refused to take the tests, Aden would have arrested him immediately for driving under the influence of intoxicants (DUII). Defendant agreed to do the tests. Defendant completed three tests and, in Aden's opinion, failed each of them. Aden arrested defendant for DUII.

Defendant filed a motion to suppress. He argued that Aden had violated ORS 810.410 when he expanded the scope of the stop to investigate whether defendant was driving under the influence of intoxicants and that, as a result, all evidence discovered after the expansion of the stop had to be suppressed. In the alternative, he argued that he had not voluntarily consented to perform the field sobriety tests and that Aden did not have probable cause to arrest him for DUII prior to his performance of those tests. Therefore, because field sobriety tests are searches under Article I, section 9, of the Oregon Constitution,[1] defendant's Article I, section 9, rights were violated when he performed the tests. Defendant argued that, as a result, the trial court was required to suppress the field sobriety tests and all evidence derived from them.

The trial court ruled on each of defendant's arguments. First, it concluded that, when Aden asked defendant to walk to the back of the pickup, Aden "moved beyond what he needed to do for purposes of a traffic stop for the unsignaled turn and the speeding in order to smell the alcohol at a different place." The court concluded, therefore, that Aden had violated ORS 810.410 and that all of the evidence discovered after that violation had to be suppressed. The court also ruled that, under the circumstances, defendant had not voluntarily consented to perform the field sobriety tests. Finally, it ruled that Aden did not have probable cause to arrest defendant before defendant performed the tests. The state appeals pursuant to ORS 138.060(3).

■ On appeal, the state challenges all three of the court's rulings. First, it argues that Aden did not violate ORS 810.410(3)(b) when he expanded the scope of the traffic stop to conduct a DUII investigation. We agree. ORS 810.410(3)(b) provides:

---

[1] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

> "A police officer * * * [m]ay stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

Under that statute, an officer may expand the investigation of a person stopped for a traffic infraction only if the officer has a reasonable suspicion that the person has engaged in illegal activity other than the traffic infraction. *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996). Thus, in order for Aden to expand the scope of the traffic investigation in this case, he had to have a reasonable suspicion that defendant was driving under the influence of intoxicants.

■    Aden did not expand the scope of the traffic stop until he asked defendant what he had had to drink that night, which was after Aden had smelled alcohol. At that point, defendant's having been at a bar, his driving, his failure to pull over immediately after Aden had turned on the patrol car's overhead lights, his decision, after he got out of his pickup, to walk away from Aden, and the odor of alcohol led Aden to suspect that defendant was driving under the influence of intoxicants. Considering the totality of the circumstances, that suspicion was reasonable. Therefore, Aden's decision to expand the scope of the stop in order to conduct a DUII investigation did not violate ORS 810.410(3)(b). The trial court erred in granting defendant's motion to suppress on that ground.

    The trial court made that error because it incorrectly concluded that Aden had expanded the scope of the traffic stop when he told defendant to walk to the back of the pickup. At that point, Aden had not detected the odor of alcohol and, the trial court concluded, he did not have a reasonable suspicion that defendant was driving under the influence of intoxicants. Aden testified:

> "As soon as he stopped both of the car doors—the pickup doors opened and both gentlemen got out. *The passenger went and walked towards the house. And I asked Mr. Finney for his driver's—asked him to step back to the rear of his vehicle—and then I asked him for his driver's license.*"

(Emphasis supplied.) He continued, "When I got close enough to ask [defendant] for his driver's license, I could smell the alcohol." Given those facts, the only reasonable interpretation of Aden's actions is that Aden told defendant to walk to the back of the pickup in order either to begin or continue the traffic investigation. Moreover, it is clear that Aden's detection of the odor of alcohol is not linked to defendant's movement in any way but, rather, is linked to Aden's decision to get close enough to defendant to ask him for his driver's license. That proximity is a necessary consequence of Aden's investigation of the original traffic infractions. Defendant does not argue that Aden's order that defendant move to the back of the pickup constituted a search or a seizure under Article I, section 9. Because Aden's order was made in conjunction with issuing the traffic citation and did not lead to the discovery of any evidence, we conclude that the trial court erred when it concluded that Aden had expanded the scope of the traffic stop by ordering defendant to step to the rear of the pickup.

■■	The state argues that the trial court also erred when it ruled that defendant's Article I, section 9, rights were violated when defendant performed the field sobriety tests. The state conducts a search under Article I, section 9, of the Oregon Constitution, when it requires a person to perform field sobriety tests. *State v. Nagel*, 320 Or 24, 31 n 6, 880 P2d 451 (1994). As a consequence, the state must establish that the officer conducted the tests pursuant to a warrant or to one of the recognized exceptions to the warrant requirement. *See State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992). Here, the state argues that defendant consented to perform the tests. Consent is a recognized exception to the warrant requirement. *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994). To establish that exception, the state must prove by a preponderance of the evidence that defendant voluntarily consented to perform the tests. *See State v. Stevens*, 311 Or 119, 137, 806 P2d 92 (1991). Simply acquiescing in an officer's exercise of authority does not constitute consent. *State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990).

■■	In conducting our review, we do not disturb the trial court's findings of historical fact that are supported by evidence, but we "assess anew whether the facts suffice to meet

constitutional standards." *Stevens*, 311 Or at 135. In assessing the voluntariness of the consent, "we examine the totality of the circumstances to determine whether defendant's 'consent was given by an act of free will or was the result of coercion, express or implied.' " *State v. Maddux*, 144 Or App 34, 38, 925 P2d 124 (1996) (quoting *State v. Parker*, 317 Or 225, 230, 855 P2d 636 (1993)). Considering the totality of the circumstances, we conclude that claimant voluntarily consented to perform the tests.

In essence, the trial court ruled that defendant simply acquiesced in Aden's exercise of authority over him. It stated that defendant had "subjectively believed that he had no choice but to do the [field sobriety tests]" when Aden asked him to consent to do them. It found that Aden had told "defendant that the purpose of the tests was to test for his sobriety" when he asked defendant to consent to perform the tests.[2] It

---

[2] Aden testified as follows about his request that defendant consent to perform the tests:

"Q: After making those observations [about the odor of alcohol and defendant's appearance], what did you do?

"A: I asked him if he would consent to performing some field sobriety tests.

"* * * * *

"Q: Did you ask the defendant if he was physically able to perform the tests?

"A: Yes, I did. Each time I asked him to perform a test, I asked him if he understood the test and if he was willing to perform it and, the tests that he performed, he said yes.

"* * * * *

"Q: You stated that he consented to these tests, is that correct?

"A: Correct."

On cross-examination, defendant's attorney again raised with Aden the issue of defendant's consent:

"Q: You asked my client to submit to some field tests. Would it be fair to say you don't recall exactly what you told him in that respect?

"A: I can't say exactly what I said, but I asked if he would consent to some field sobriety tests.

"* * * * *

"Q: Going back to what you asked him in terms of the field tests—can you tell us exactly what you said to him, in terms of whether he would do the tests, what did you say?

"A: I asked him if he would consent to a series of field sobriety tests to determine whether or not he was under any influence of alcohol.

"Q: You did not advise him of his Miranda rights?

concluded, however, that other factors combined to coerce defendant into consenting to do that:

> "The relevant circumstances are that the defendant was stopped in a driveway; that the officer believed, based on the passenger's walking into the house and defendant apparently taking steps to do the same, that [defendant] in some sense 'belonged' there; that the officer asking was in uniform, with his patrol car parked immediately behind him with the lights shining; that the two other patrol cars had arrived within seconds, both with their overheads on, and that one of those was parked directly behind the first officer's patrol car, and that the other was parked to the side on the grass; and that the occupants of both of [those] patrol cars, also uniformed officers, immediately exited their vehicles."

We are not persuaded that the factors identified by the trial court lead to a conclusion that defendant did not voluntarily consent to perform the tests. We do not consider it relevant that Aden believed that defendant "in some sense 'belonged' " at the house. That Aden was in full uniform and had left his patrol car's overhead lights on are relevant to whether defendant consented to perform the tests, as is the fact that defendant could not have driven away from the scene. However, we do not think that those factors contributed significantly to the coerciveness of the situation, because they are aspects of virtually every stop.

While we agree that the arrival at the stop of two uniformed officers in their patrol cars could be relevant to the

---

"A: No, I did not.

"* * * * *

"Q: You didn't tell him he had an option of whether or not to take the tests?

"A: I just asked him—it was a question."

Although Aden testified that he told defendant that the tests were to determine whether defendant was "under the influence" or "OK to drive," in its oral ruling the trial court stated that the officer's testimony was "not sufficient to inform him that he was taking the tests to help [Aden] determine if he was under the influence." In its written opinion and order, however, it stated twice that it believed that Aden had told the defendant that the purpose of the tests was to determine if he was under the influence. When the trial court's written and oral findings conflict, the written findings control. Thus, in this case, we accept that Aden told defendant the purpose of the tests.

analysis of a defendant's consent, here the evidence does not show that the officers' arrival influenced defendant's decision to perform the tests. Defendant testified:

"Q: What do you recall him telling you in regards to whether you would perform field sobriety tests?

"A: I believe he just asked me if I would perform some tests for him.

"Q: And did you understand at that point that those tests were going to be used to gauge your state of sobriety?

"A: No.

"Q: *And what was your mind-set in terms of whether or not to submit to those tests?*

"A: *Well, I guessed I had to do it. He is an officer of the law and I'm just a citizen[,] a law-abiding citizen[,] and I just went ahead with it.*

"Q: What was your understanding as to what would happen to you if you elected not to perform those tests?

"A: I don't know. I guess he probably would have arrested me. I don't know.

"Q: Were the other officers that had exited their cars in the vicinity at that point?

"A: Yes."

(Emphasis supplied.) It is apparent from that testimony that, although the other officers had arrived at the house before Aden asked for defendant's consent to perform the tests, the presence of the other officers did not influence defendant's decision to perform the tests.

Instead, the testimony indicates that defendant agreed to perform the tests because he thought that, as "a law-abiding citizen," he had to consent. If, by that testimony, defendant meant that he did not understand that he was free to refuse to perform the tests, his misunderstanding could bear on whether his consent was voluntary. *See Maddux*, 144 Or App at 39. However, in light of the circumstances here, we conclude that any misunderstanding is not dispositive. After defendant had admitted that he had had "three rum and

cokes" that evening, Aden simply asked him if he would consent to take some tests to see if he was "OK to drive" or "under the influence." Aden did not threaten him or tell him that he had to do the tests or that, if he refused to perform them, that refusal would be used against him. Defendant did not appear to be intimidated or coerced by Aden or the other officers at the house. In short, there is no evidence that the surrounding circumstances influenced defendant's decision to consent to perform the tests. Although defendant may have been under the mistaken unexpressed impression that, as "a law-abiding citizen," he had to perform the tests, Aden had no affirmative obligation to disabuse him of that notion, when there is no evidence that Aden knew that he held it. We conclude that defendant voluntarily consented to perform the field sobriety tests and that defendant's performance of them did not violate Article I, section 9, of the Oregon Constitution.[3]

For the foregoing reasons, the trial court erred in granting defendant's motion to suppress.

Reversed and remanded.

---

[3] Because of our conclusion, we do not need to address the state's argument that the trial court erred in concluding that Aden did not have probable cause to believe that defendant was driving under the influence of intoxicants before Aden conducted the field sobriety tests.