830 December 18, 2024 No. 907

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ALISON MICHELE IAMS,
*Defendant-Appellant.*

Deschutes County Circuit Court
19CR08326; A177674

Raymond D. Crutchley, Judge.

Argued and submitted January 22, 2024.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Lauren P. Robertson argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and David B. Thompson, Assistant Attorney General.

Before Powers, Presiding Judge, Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

Vacated and remanded.

## HELLMAN, J.

Defendant was charged with driving under the influence of intoxicants (DUII) after an officer saw her commit traffic infractions on a public road, suspected that she was intoxicated, followed her into her driveway to issue the citation and continue his DUII investigation, and then administered field sobriety tests (FSTs) in the driveway. Defendant moved to suppress the evidence discovered after the officer followed her into the driveway, arguing that the officer illegally entered her private property and approached her without a warrant or exception to the warrant requirement, and that, in any event, defendant had not voluntarily consented to take the FSTs. The state responded that the officer was not a trespasser because he had implied consent to enter the driveway, and that nothing about the circumstances suggested that defendant was unable to voluntarily consent. The trial court denied defendant's motion to suppress, reasoning that the officer "had the right to continue that stop and extend that stop" onto private property and that defendant's consent to the FSTs was voluntary.

Defendant, who was subsequently found guilty of DUII, argues that the trial court was wrong as to both aspects of her motion to suppress. As explained below, we reject defendant's argument regarding her consent to the FSTs. However, we agree with defendant that the trial court erred with regard to the question of the officer's intrusion into the driveway. On that issue, we vacate and remand for the trial court to address the state's primary justification for the entry—*i.e.*, that the officer had implied consent to enter the driveway—and to engage in the necessary factfinding on that issue.

We review a trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them. *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017). "When the trial court did not make express factual findings, and there is evidence from which the trial court could have found a fact in more than one way, we will presume that the trial court decided the facts consistently with its legal conclusion." *Id.*

However, "[i]f an implicit factual finding is not necessary to a trial court's ultimate conclusion or is not supported by the record, then the presumption does not apply." *Pereida-Alba v. Coursey*, 356 Or 654, 671, 342 P3d 70 (2015). We recite the following background facts, drawn from the court's findings and the record of the suppression hearing, in light of that standard of review.

Around 2:30 a.m., while on patrol in Bend, Officer Avery saw an SUV with a taillight out. He followed the SUV onto Columbia Avenue, which did not have marked lanes, and noticed that the SUV was weaving three feet in either direction. Avery continued to follow the SUV as it turned onto NW Newport Avenue. Avery had been following the SUV for seven to nine blocks when the driver signaled to turn into a driveway on NW Newport. Once the driver signaled to turn, Avery activated the overhead lights of his patrol car. The SUV proceeded down the driveway and parked behind the house to the east (left) of the driveway. Avery, who had a field training officer with him in the car, followed the SUV into the driveway. Avery believed that he could follow the SUV based on the facts that he "initiated the stop on the street, and she continued into the driveway, [and he] wasn't sure that it was her residence at that time."

After entering the driveway, Avery stopped between the residences rather than proceeding around the corner, because he was not sure where defendant was going. Avery and his field training officer then got out of the car and walked up the driveway, which curved between two residences and toward a third house in the back.

Avery walked up the center of the driveway a little further to where he could see the driver, and he saw defendant getting out of the SUV. Avery greeted defendant, who said "hi," and told her who he was. Defendant said that she had seen Avery following her and asked why. Avery explained that he was initiating a traffic stop based on what he had observed, and, although he suspected that defendant may have been impaired, he did not tell her that. Avery noticed that defendant had "bloodshot, watery eyes," and that she was "chewing gum and was just kind of chatty" with Avery as they were talking; he also noticed a faint smell of alcohol.

Avery asked for defendant's license and registration, which she produced after "fumbling through [papers and cards from her purse], dropp[ing] several of them."

Based on what he was observing, Avery asked defendant if she would consent to performing voluntary standard field sobriety tests for him. Defendant agreed to perform the tests and Avery administered the FSTs in the driveway between the residences near the patrol car.[1] Avery observed clues of impairment during the FSTs and arrested defendant. Following her arrest, defendant gave a breath sample that showed blood alcohol content of .09.

In a written motion to suppress, defendant argued that all of the evidence obtained after Avery drove onto the driveway and approached her—including statements defendant made to the officers, the results of the FSTs, and the results of her breath test—should be suppressed because Avery unlawfully entered the curtilage of her home without probable cause of a crime, without a warrant, and without an exception to the warrant requirement, in violation of Article I, section 9, of the Oregon Constitution. At the suppression hearing, after the evidentiary record had developed, defendant raised an additional issue under Article I, section 9: that the testimony showed that the circumstances of the request (in her backyard, with multiple officers present, when she was being investigated for DUII) were coercive and that "alcohol use may have impaired her ability to make a knowing, intelligent, voluntary choice."

In response to those arguments, the state contended that Avery's entry into the driveway was lawful because he had implied consent to enter and proceed up the shared driveway, which was a natural pathway to the third residence. However, at one point during the suppression hearing, the state combined that argument with the suggestion that, logically, police should be allowed to pursue suspects onto private property to complete a stop and continue an investigation:

---

[1] Eventually, a second patrol car arrived. However, at the time that Avery asked defendant to perform the tests, Avery and his field training officer were the only police on the scene.

> "The fact that she has a long driveway in this case, an interesting case, does not affect the validity of the stop or the contact, partially because of the rear—the rear residence, making that entire common driveway fair ground for Officer Avery to walk on, *and partially because I do not believe that logically, you should be able to get out of the DUI that you know you're being stopped and drive around to your normal parking place behind—you know, around the corner, slightly, of the house rather than just stopping on a short driveway. I do not think that logically that follows to negate all the factors justifying the stop and the investigation.*"

(Emphasis added.) As for the question of consent to the FSTs, the state argued that, although that issue had not been raised in the motion, the presence of uniformed officers and the fact that defendant was not free to leave did not mean that her consent was involuntary.

The trial court denied defendant's motion to suppress. The court reasoned that Avery initiated a traffic stop on Newport Avenue while both vehicles were on the street, once defendant had signaled to turn into her driveway; that defendant then turned onto her own driveway; and that Avery "had the right to stop her and had probable cause to stop her for the traffic infraction." The court then addressed the entry into the driveway, albeit briefly, in the context of addressing reasonable suspicion of DUII:

> "And the question then becomes whether or not he had reasonable suspicion to conduct a DUI investigation. And under Oregon law, an officer may expand an investigation of a person stopped for a traffic infraction only if the officer has a reasonable suspicion that the person has engaged in illegal activity other than the traffic infraction. *The officer had a right to be where he was in that driveway because he had the right to stop her and give her a traffic citation.* The question then becomes did he have reasonable suspicion to extend the stop?"

(Emphasis added.) The trial court concluded that Avery had reasonable suspicion to investigate the crime of DUII and thereby extend the stop. The court went on to conclude that nothing in the circumstances of the stop suggested that defendant's will was overborne and that, in the totality of the circumstances, her consent to the FSTs was voluntary.

At that point, defendant asked the trial court to clarify its "findings of fact and conclusions of law regarding the issue of whether or not there was a privacy interest in that back area where she had contact with law enforcement." In response, the court returned to the officer's initiation and continuation of the stop:

"So the Court finds that the officer had the right to be there given that he had the right to stop her, and he initiated the stop on the—on Newport Avenue, she turned into that area. He still had the right to stop her and be there at that time. Given that he had the right to stop her and the issue then becomes at that point, did he observe anything about her that would rise to reasonable suspicion to continue or extend the stop to investigate a DUI. And given that he had the—he had that established, then he had the right to continue that stop and extend that stop.

"So the question is whether or not he had the right to be there, and the Court finds that he had the right—a lawful right to be there at that time."

After the court denied the motion to suppress, the case went to trial, where the state presented evidence of defendant's performance on the FSTs and her blood alcohol content. She was found guilty of DUII. She now appeals, arguing that the court's ruling on her motion to suppress was incorrect both as to the lawfulness of Avery's intrusion into the driveway and her consent to the FSTs.

*Intrusion into the Driveway.* In her first assignment of error, defendant contends that the trial court erred in ruling both that Avery had the right to park on the driveway and then subsequently proceed into what defendant describes as her backyard. According to defendant, the trial court's expressed rationale—that the officer had probable cause to stop defendant for the traffic infractions, which justified his entry onto the shared driveway and his further approach of defendant so long as there was reasonable suspicion of DUII—is not a justification for a warrantless entry onto her property. Defendant further argues that the record does not support any alternative basis for affirmance, including the other grounds argued by the state below, such as implied consent for the intrusion.

The state responds that defendant reads the court's ruling too narrowly. According to the state, the question that the parties litigated extensively below—and that the trial court decided—was whether defendant had a privacy interest in the shared driveway. The state focuses its appellate arguments, as it did below, on that question and whether Avery had implied consent to enter the driveway and proceed to the area where he contacted defendant. The state does not attempt to defend what defendant characterizes as the court's ruling—that, so long as a stop is initiated on a public road, police have the ability to continue an investigation on private property if they develop reasonable suspicion.

As a threshold matter, we must determine the basis for the court's ruling with regard to the entry of the property and approach of defendant at the back of the shared driveway. The state is correct that the question of implied consent was the primary focus of the suppression hearing. However, as set forth earlier, the trial court's ruling did not engage with the parties' arguments on that issue, despite an express invitation to do so. In explaining the basis for its ruling, the court initially stated that the "officer had a right to be where he was in that driveway *because he had the right to stop her and give her a traffic citation*." (Emphasis added.) Then, after defendant explicitly asked the court to clarify its ruling as to the privacy interest in the back area of the driveway where Avery contacted defendant, the court again found that "the officer had the right to be there *given that he had the right to stop her*," and then proceeded to address reasonable suspicion to continue or expand the stop. (Emphasis added.) Given that context, we do not understand the trial court to have ruled on the issue of implied consent to enter and approach defendant where he contacted her. Rather, we take the court's ruling at face value: Avery was justified in approaching defendant in her driveway because he "had the right to stop her" and "then he had the right to continue that stop and extend that stop" based on reasonable suspicion of DUII.

The state, as noted earlier, does not defend that rationale, and the record does not support it. Article I, section 9, protects against unreasonable invasions of privacy interests. *See generally State v. Newcomb*, 359 Or 756, 764,

375 P3d 434 (2016). Whether privacy interests have been invaded is not necessarily determined by whether police conduct takes place on private or public property. *State v. Michel*, 264 Or App 259, 263-64, 331 P3d 1097 (2014) (citing *State v. Erb*, 135 Or App 421, 424, 899 P2d 716 (1995)). Rather, the classification of a space that "can be deemed private" is a reflection of constitutional principles that have developed through case law. *Id.* (citing *State v. Smith*, 327 Or 366, 372, 963 P2d 642 (1998); see *also id.* at 264 (citing *State v. Campbell*, 306 Or 157, 170-71, 759 P2d 1040 (1988), for the proposition that "both laws and social conventions have long recognized the right to exclude others from certain places deemed to be private") (internal quotation marks omitted))).

That body of case law regarding privacy includes cases involving curtilage of a residence, including driveways. As we summarized those cases in *State v. Goldberg*, 309 Or App 660, 665, 483 P3d 671 (2021), the protections of Article I, section 9, extend beyond the home to include the curtilage of private property, and "[w]hen considering a warrantless entry onto the curtilage of private property, an officer's status as law enforcement affords him no greater right to intrude than any other stranger." *Id.* In other words, if "an officer's presence on the property is trespassory, it is an unconstitutional search." *Id.* However, there "exists an operative, but rebuttable, presumption—that the landowner has impliedly consented to visitors going to the front door of the house." *Id.* Driveways connected to residences can be part of the curtilage of a home. *See, e.g.*, *State v. Olinger*, 240 Or App 215, 221, 246 P3d 20 (2010) (addressing police entry into an offshoot of a driveway and stating that, if the "entry onto that area of the curtilage was not pursuant to defendant's implied consent, his intrusion was a trespass, and thus a search in violation of Article I, section 9).

As that body of law further reflects, warrantless entries and searches of areas in which a defendant has a privacy interest are *per se* unreasonable unless they fall "within one of the few specifically established and well-delineated exceptions to the warrant requirement." *State v. Davis*, 295 Or 227, 237-38, 666 P2d 802 (1983) (citing *Katz*

*v. United States,* 389 US 347, 357, 88 S Ct 507 19 L Ed 2d 576 (1967) (internal quotation marks omitted)). As the court explained in *Davis,*

> "The state has the burden of showing that circumstances existing at the time of entry invoke one of these exceptions. Absent consent, a warrantless entry can be supported only by exigent circumstances, *i.e.*, where prompt responsive action by police officers is demanded. Such circumstances have been found, for example, to justify entry in the case of hot pursuit, the destruction of evidence, flight of a suspect, and where emergency aid was required by someone within."

*Id.* (internal citations omitted); *see also State v. Baker*, 350 Or 641, 649, 260 P3d 476 (2011) (recognizing, in addition to the exceptions listed in *Davis*, an officer-safety exception).

In this case, although the parties litigated the question of whether defendant had a privacy interest in the driveway, the trial court did not answer that question. That is significant, because Avery's warrantless entry into a part of the driveway in which defendant had a protected privacy interest would require the state to demonstrate that the entry came within one of the "few specifically established and well-delineated exceptions to the warrant requirement." *Davis*, 295 Or at 237 (citing *Katz* 389 US at 357). The state did not attempt to do that in the trial court, and the court's reasoning—that Avery "had the right to stop her" based on probable cause of a traffic violation and "then he had the right to continue that stop and extend that stop" based on reasonable suspicion of DUII—does not fall within any recognized exception. Although the court's reasoning is akin to a "hot pursuit" theory, the state has not developed a record to establish any kind of exigency and, on appeal, has disclaimed reliance on any exigency exception. *See State v. Roberts*, 249 Or 139, 143, 437 P2d 731 (1968) (holding that officers in hot pursuit need not obtain a warrant before searching a car that the defendant left behind as he fled on foot).

The trial court therefore erred in denying defendant's motion to suppress based on the lawfulness of Avery's initial stop and his subsequent development of reasonable suspicion. *See State v. Jackson*, 71 Or App 76, 80, 691 P2d

130 (1984) (rejecting the state's argument that the officer's presence on private property was permissible because he was "looking for defendant and not conducting a search"; "[i] t is no more acceptable to allow police, when they are unable to obtain a warrant, to enter private portions of the property to 'confront the occupant'"); *cf. State v. Dahl*, 323 Or 199, 209, 915 P2d 979 (1996) ("A well-established, constitutional principle is that, where there is neither 'hot pursuit' nor any other pre-existing, exigent circumstances, police officers with probable cause to arrest a suspect may not make a warrantless and nonconsensual entry into a suspect's house in order to make a routine felony arrest of the suspect.").

The next question is whether we can affirm on the alternative grounds to which the state devotes the bulk of its argument: that Avery was not trespassing because he had implied consent to enter and proceed up the shared driveway. That question involves factfinding, including drawing inferences from the testimony and exhibits as to the nature of the access to the houses, how visitors might naturally approach the shared driveway (and where they might park), and whether Avery was within those parts of the driveway that visitors could expect to use to access the front doors of the different houses. *See State v. Ohling*, 70 Or App 249, 253, 688 P2d 1384, *rev den*, 298 Or 334 (1984) ("Going to the front door and knocking [is] not a trespass. Drivers who run out of gas, Girl Scouts selling cookies, and political candidates all go to the front doors of residences on a more or less regular basis. Doing so is so common in this society that, unless there are posted warnings, a fence, a moat filled with crocodiles, or other evidence of a desire to exclude casual visitors, the person living in the house has impliedly consented to the intrusion.").

Because the trial court did not address implied consent, we cannot presume that it engaged in the requisite factfinding. *See Pereida-Alba*, 356 Or at 671. We therefore vacate and remand for the trial court to address the question of implied consent in the first instance. *See State v. Deatley*, 316 Or App 351, 356, 502 P3d 760, 764 (2021) (explaining that we have taken that approach in circumstances where a trial court has not engaged in the factfinding necessary to

resolve a motion to suppress). To be clear, our remand is limited to allowing the trial court to make the necessary findings of fact on the existing record, and thereafter to address the question of implied consent.

*Consent to FSTs.* In her second assignment of error, defendant argues that "[e]ven if Avery could have parked on defendant's driveway and approached her in her backyard, the state still failed to show that defendant voluntarily consented to perform FSTs." Although we are vacating and remanding for further factfinding on defendant's first assignment, our relief is conditional: The trial court may reach the same conclusion as to that issue on remand, leaving the question of the FSTs. We therefore turn to the merits of defendant's independent grounds for suppression of the FSTs.

FSTs are searches within the meaning of Article I, section 9, and the same principles described earlier apply: In the absence of a warrant for the search, the state must show an exception to the warrant requirement. *See State v. Hamilton*, 330 Or App 258, 268, 543 P3d 704 (2024) (describing that framework). One such exception is voluntary consent. *See State v. Maddux*, 144 Or App 34, 41, 925 P2d 124 (1996) (holding that, where a defendant voluntarily consents to a request to perform FSTs, the performance of the tests does not violate Article I, section 9). "In reviewing the voluntariness of a defendant's consent to a search, we consider whether, under the totality of the circumstances, the consent was given by an act of free will or was the result of coercion, express or implied." *State v. Moore*, 354 Or 493, 505, 318 P3d 1133 (2013), *adh'd to as modified on recons*, 354 Or 835, 322 P3d 486 (2014). "Simply acquiescing in an officer's exercise of authority does not constitute consent." *State v. Finney*, 154 Or App 166, 171, 961 P2d 256 (1998).

In this case, the record supports the trial court's ruling as to voluntariness. Viewing the facts consistently with the court's express and implicit findings, the totality of the circumstances establishes that defendant's consent was freely and voluntarily given. The officer testified that he asked for voluntary consent, and defendant agreed. There was nothing coercive about the encounter beyond the

ordinary circumstances of a breath test; defendant had been stopped, and the circumstances made it apparent that defendant was being investigated for driving while intoxicated. Although the encounter occurred at night, and two officers were present, the encounter occurred openly in the driveway of a private residence, not in a confining environment, and nothing in the record suggests that defendant, who was "chatty" and cooperative, was too impaired to consent. *See Finney*, 154 Or App at 175 (holding that the defendant's consent was voluntary despite the presence of multiple officers conducting a DUII investigation after the driver pulled over into a private driveway at night).[2] We therefore affirm the trial court's ruling on that aspect of defendant's motion to suppress.

Vacated and remanded.

_____

[2] In arguing to the contrary, defendant relies on *State v. Tennant*, 310 Or App 70, 76, 483 P3d 1226 (2021), in which we held that, "in assessing consent versus mere acquiescence, we view the situation from the perspective of the person being asked for consent, not the police officer asking." According to defendant, the record is too sparse with regard to the exact phrasing of Avery's request and defendant's response for a court to conclude that the state met its burden of showing consent as opposed to mere acquiescence. That argument is not properly before us, given the manner in which defendant raised the issue of voluntary consent in this case. Defendant's written motion did not raise voluntary consent, nor did she raise the issue at the beginning of the suppression hearing, thereby alerting the state to its burden of proof on that issue; instead, she waited until the evidence was presented and made a voluntariness argument based on what the evidence showed about the encounter, not gaps in the state's evidence. Had defendant advanced the argument that she makes on appeal regarding the state's burden, the trial court likely would have deemed her voluntary consent argument to be untimely or would have allowed the state an opportunity to further develop the record as to what was said.