190 February 26, 2025 No. 138

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRYCEN DENNIS SCOFIELD,
aka Brycen D. Scofield,
*Defendant-Appellant.*

Jackson County Circuit Court
21CR46817; A182277

Kelly W. Ravassipour, Judge.

Argued and submitted January 14, 2025.

Amy E. Potter argued the cause for appellant. Also on the briefs was Angeli Law Group, LLC.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Defendant appeals a judgment of conviction for second-degree murder, ORS 163.115, following a conditional guilty plea after the trial court denied his motion to suppress evidence. In response to a 9-1-1 call that reported defendant assaulted someone with a hammer, police entered defendant's apartment pursuant to the emergency aid exception to the warrant requirement and found the victim deceased inside a refrigerator. Defendant was then arrested and charged for the victim's murder. Defendant moved to suppress the evidence found in his apartment, arguing that (1) the emergency aid exception did not apply, (2) the police lacked probable cause to arrest him, and (3) a subsequent warrant to search his and others' phones was invalid. We affirm.

"We review a trial court's denial of a motion to suppress for legal error, and we are bound by the trial court's factual findings if there is any constitutionally sufficient evidence in the record to support them." *State v. Iams*, 336 Or App 830, 832, ___ P3d ___ (2024) (citing *State v. Maciel-Figueroa*, 361 Or 163, 165-66, 389 P3d 1121 (2017)). In the absence of express factual findings, we "presume that the trial court decided the disputed facts in keeping with its ultimate conclusion." *State v. Garcia*, 276 Or App 838, 839, 370 P3d 512 (2016). We state the facts, as taken from the officers' body camera footage and testimony at the suppression hearing, in accordance with that standard.

An associate of defendant's, McLeod, called 9-1-1 to report that he and his brother had witnessed defendant assault a person in defendant's apartment with a hammer. McLeod reported that there was blood "everywhere" and that the victim might be dead. McLeod provided specific details about defendant's apartment, including its location, outdoor decorations, the car that was parked outside, and a rifle that his brother left there. McLeod also gave the dispatcher his and his brother's full names, dates of birth, and current location, and he said they would be available for officer follow-up. Police arrived at defendant's apartment and corroborated the details McLeod had provided. Police also observed defendant putting up a barrier over his back door

and barricading himself in his residence. After several minutes, police were able to call defendant on his cell phone and convince him to come outside. When defendant exited his apartment, police placed him in handcuffs and entered his home.

Inside the apartment, police first "cleared" the area by doing an initial sweep of the downstairs and upstairs. Police did not observe evidence of a hammer attack in their initial sweep but did notice a refrigerator lying on the floor. Once the initial sweep was complete, Lieutenant Cromwell, the officer in charge, noticed that there was blood on the refrigerator and on the couch next to the refrigerator. Cromwell also observed a liquid on the floor that might have been used for cleaning. Cromwell ordered Officer Jackson, another police officer involved in the sweep, to open the refrigerator to "just make sure there's not somebody stuffed in it." Jackson opened the refrigerator, lifted a piece of cardboard that was blocking his view, and found the victim inside with a bloodied head. Cromwell ordered Jackson to "close it up," and Jackson said that they needed to check and make sure that the victim was not alive. Jackson checked the victim but could not find a pulse.

Later, after seizing several phones from defendant and his home, law enforcement sought and executed a warrant to search the phones. Defendant moved to suppress the evidence from the search of his apartment, his arrest, and the search of the phones, arguing that (1) the emergency that justified the officers' entry into the apartment had ended by the time they decided to open the refrigerator, (2) police lacked probable cause to arrest defendant, and (3) the warrant to search the phones was invalid, because the judge's signature was unclear and it did not specify where on the phones the evidence would be found. After the trial court denied his motion, defendant entered a conditional guilty plea and now appeals, raising the same arguments he made below.

*Emergency aid exception.* In his first assignment of error, defendant contends that the trial court erred in ruling that the emergency aid exception to the warrant requirement applied and permitted officers to open the refrigerator

and discover the victim. Defendant concedes that the exception allowed the officers to initially enter his apartment in search of a person in need of emergency aid, but he argues that any potential emergency had ended by the time officers decided to open the refrigerator. We disagree.

The emergency aid exception to Article I, section 9, of the Oregon Constitution applies when officers have an "objectively reasonable belief, based on articulable facts, that a warrantless entry is necessary to either render immediate aid to persons, or to assist persons who have suffered, or who are imminently threatened with suffering, serious physical injury or harm." *State v. Baker*, 350 Or 641, 649, 260 P3d 476 (2011) (footnotes omitted). "The exception requires both that an officer hold the subjective belief that there is a need to provide immediate aid and that the belief be objectively reasonable." *State v. Schmitz*, 299 Or App 170, 174, 448 P3d 699 (2019).

We are bound by the trial court's finding that officers held the requisite subjective belief that there was a person inside the refrigerator requiring emergency aid because they testified as to that belief at the motion to suppress hearing. *Cf. State v. Stanley*, 287 Or App 399, 405, 404 P3d 1100 (2017) (no subjective belief to give rise to emergency aid exception when none of the officers "testified to having an actual belief that the victim was seriously injured and in need of immediate assistance"); *see also Dept. of Human Services v. M. B.*, 333 Or App 587, 597, 553 P3d 582 (2024) (appellate courts generally defer to lower courts' credibility findings "because the trial judge is in a better position * * * to observe and experience the witness's nonverbal cues * * * [and] body language").

That belief was also objectively reasonable: Emergency dispatch received a 9-1-1 phone call from a named eyewitness to an assault, and police corroborated several details the witness had provided. At the time the police arrived at defendant's apartment, defendant was barricading himself inside and refused to come out. *See State v. Clay*, 293 Or App 797, 802-03, 429 P3d 1038, *rev den*, 364 Or 209 (2018) (relying on observations of police officers upon arriving at defendant's home and 9-1-1 call to determine whether

officers' belief was objectively reasonable in emergency-aid context). After entering defendant's home, police had not yet located the victim when they saw the refrigerator lying on the floor, as well as blood and cleaning fluid nearby. *Cf. State v. Hamilton*, 285 Or App 315, 324-25, 397 P3d 61 (2017) (emergency aid exception that allowed initial entry to defendant's home did not justify continued search after police found person they thought was in need of aid); *State v. Bistrika*, 262 Or App 385, 393, 324 P3d 584, *rev den*, 356 Or 397 (2014), *cert den*, 577 US 828, *reh'g den*, 577 US 1022 (2015) (emergency dissipated once police located named victim who had supposedly fallen into pond on family property and saw he was uninjured). Given the information available to police at the time, they could reasonably believe that there was a victim of a hammer assault inside the refrigerator in need of their aid.[1]

*Probable cause.* In his second assignment of error, defendant argues the trial court erred in determining that officers had probable cause to arrest him. The trial court did not err. Officers arrested defendant after they corroborated numerous details from a named citizen's eyewitness report and observed defendant barricading himself inside his apartment. That was sufficient probable cause. *See State v. Pollock*, 189 Or App 38, 42, 73 P3d 297 (2003), *aff'd*, 337 Or 618, 102 P3d 684 (2004) ("In determining whether information from third persons is sufficiently reliable to establish probable cause, we look to the totality of the circumstances, including the citizen's reliability and basis of knowledge.").

*Warrant.* Finally, defendant challenges the warrant that was used to find evidence on the phones seized from him and his home. More specifically, defendant contends that the judge's signature on the warrant was illegible and that the warrant was insufficiently particular because it did not specify where on the phones police could search for evidence. However, the evidence in the record supports the trial

---

[1] Defendant's federal arguments thus fail as well. *See Brigham City, Utah v. Stuart*, 547 US 398, 403, 126 S Ct 1943, 164 L Ed 2d 650 (2006) (emergency aid exception to Fourth Amendment's warrant requirement allows entry when it is objectively reasonable to believe that entry is needed "to assist persons who are seriously injured or threatened with such injury," and does not require officers to have a subjective belief).

court's finding that the signature was legible. *See State v. McKee*, 272 Or App 372, 380, 356 P3d 651 (2015) (legibility a factual issue). And the warrant was sufficiently particular, notwithstanding any purported lack of specificity on where to search, because it was reasonably limited to specific times and communications related to specific crimes, *see State v. Turay*, 371 Or 128, 151, 532 P3d 57 (2023) (looking to dates, time limitations, and subject matter limitations to determine warrant's sufficient specificity), and described what investigating officers believed would be found "with as much specificity as reasonably possible under the circumstances," *State v. Mansor*, 363 Or 185, 216, 421 P3d 323 (2018); *see also id.* at 217 (warrant for searching an electronic device may be sufficiently particular without limiting the search to the "commonly used software programs" where information might be stored).

Affirmed.