*201 UNIS, J.
The questions in this case are (1) whether a “seizure” of a person occurs under either Article I, section 9, of the Oregon Constitution[1] or the Fourth Amendment to the Constitution of the United States[2] when law enforcement officers order a person to come out of his house with his hands up and the person to whom the order is directed complies with that order and, (2) if so, whether, in the light of the circumstances of this case, a seizure of that kind was unlawful. We answer those questions in the affirmative. We therefore reverse the contrary decision of the Court of Appeals, vacate the judgment of the district court, and remand this case to the district court for further proceedings.
On September 3, 1993, Portland police officers responded to a report from an anonymous telephone caller that there was a “man waving a gun on the front porch” at a specified address.[3] The officers arrived at that location, barricaded the streets, and surrounded the house.
As Officer Willard arrived at the scene, he observed defendant driving a car and making a wild swerve over the left side of the street. Willard shined his flashlight at defendant and saw that defendant had a “dazed look,” that he was *202 slumped behind the wheel, and that he did not respond to the light. Although he suspected that defendant was under the influence of intoxicants, Willard did not stop or pursue defendant. Willard stationed himself at the northeast corner of the house. He then saw defendant drive around the corner and into the driveway. Officers Hoesley (the officer in charge) and Kahut, along with several other officers, arrived at the scene. Willard told Hoesley that he had observed defendant driving around the block, but he did not tell Hoesley, Kahut, or any of the other officers at the scene about his other observations about defendant or that he suspected defendant to be under the influence of intoxicants.
When Kahut saw defendant come out of the house onto the front porch, she shouted for him to come down “with his hands up.” Instead, defendant went back into the house and shut the door. At Kahut’s request, a police dispatcher then telephoned defendant and ordered him[4] to come out of the house with his hands up. Defendant complied with that order. When defendant emerged from the house, the officers perceived that his eyes were bloodshot, that his speech was slurred, that he had a “swaying walk,” and that he smelled of *203 alcohol. On questioning, defendant admitted that he had driven his car earlier in the evening. Defendant was searched. After Hoesley searched defendant’s house, including the basement, she transported him to the police station where, after she administered field sobriety and breath tests, defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010.
Before trial, relying on both Article I, section 9, of the Oregon Constitution and the Fourth Amendment, defendant moved to suppress all the evidence derived from his compliance with the order to come out of the house, including the officer’s observations of his intoxication, his statement that he had been driving earlier in the evening, and the results of the field sobriety and breath alcohol tests. In support of his motion, defendant argued that he was seized unlawfully, without a warrant, inside his house when he complied with the police order to come out “with his hands up.”
ORS 131.005(11) provides that “ ‘[p]robable cause’ means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it.” Under Article I, section 9, of the Oregon Constitution, there are two components to probable cause: “An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances.” State v. Owens, 302 Or 196, 204, 729 P2d 524 (1986). The state conceded that the officers did not have probable cause to believe that defendant had committed a crime until after defendant emerged from his house in compliance with the “come-out-with-your-hands-up” order. Nevertheless, the state argued that defendant was not “seized” until the police had probable cause to arrest him by observing him after he came out of his house.
The trial court found that, when defendant complied with the order to come out of his house “with his hands up,” he was “taken in[to] custody which for all purposes is an arrest” and that defendant “was not free to go * * * [un]til [the police] secured the house.” Nonetheless, the trial court denied defendant’s motion to suppress, reasoning:
*204 “[Defendant] wasn’t forced out of the house. They didn’t drag him out of there. They told him to come out of there, and he didn’t have to come. He could have stayed in that house. And they never could have gone in that house. Never. Because they had no reason to go in the house. None whatsoever. * * * The arrest was legal.”
After a jury trial, in which the challenged evidence was received in the state’s case-in-chief, defendant was convicted of DUII and sentenced. Defendant appealed his conviction to the Court of Appeals, assigning as error the trial court’s denial of his motion to suppress. The Court of Appeals affirmed defendant’s conviction without opinion. State v. Dahl, 132 Or App 232, 888 P2d 606 (1994). We allowed defendant’s petition for review.
Before addressing defendant’s state and federal constitutional claims, we first decide whether the police officers acted lawfully under proper authorization by a politically accountable lawmaker. State v. Holmes, 311 Or 400, 404, 813 P2d 28 (1991).
A peace officer has statutory authority to make a warrantless arrest of a person if the officer has probable cause to believe that the person has committed a felony, a Class A misdemeanor, the offense of DUII under ORS 813.010, or certain other offenses. ORS 133.310(1). Peace officers also are authorized by ORS 133.033(1) “to perform community caretaking functions.” “ ‘[C]ommunity caretaking functions’ means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public.” ORS 133.033(2) (emphasis added). As used in ORS 133.005 and 133.310, “peace officer” includes a municipal police officer. ORS 133.033(2) provides:
“ ‘Community caretaking functions’ includes, but is not limited to:
“(a) The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:
“(A) Prevent serious harm to any person or property;
“(B) Render aid to injured or ill persons; or
“(C) Locate missing persons.
*205 “(b) The right to stop or redirect traffic or aid motorists or other persons when such action reasonably appears to be necessary to:
“(A) Prevent serious harm to any person or property;
“(B) Render aid to injured or ill persons; or
“(C) Locate missing persons.”
ORS 133.033(3) provides:
“Nothing contained in this section shall be construed to limit the authority of a peace officer that is inherent in the office or that is granted by any other provision of law.”[5]
The quoted statutes do not provide a comprehensive definition of what constitutes “lawful acts.” Attempting an essay on that topic would take us afield needlessly. Whatever the meaning of “lawful acts” in the context of ORS 133.033, that meaning must be consonant with the state and federal constitutions. Therefore, we assess the effect of Kahut’s telephoned order for defendant to “come out of his house with his hands up” and defendant’s compliance with that order within the parameters of the state and federal constitutions.
We first consider defendant’s assertions under Article I, section 9, of the Oregon Constitution. See State v. Kennedy, 295 Or 260, 262, 666 P2d 1316 (1983) (stating methodology). In our review, we are bound by the trial court’s findings of historical facts if there is evidence in the record to support them. State v. Bost, 317 Or 538, 541, 857 P2d 132 (1993). Our function is limited to determining whether legal principles were correctly applied. State v. Davis, 295 Or 227, 238, 666 P2d 802 (1983).
 Article I, section 9, of the Oregon Constitution prohibits police officers from conducting unreasonable searches and seizures. State v. Gerrish, 311 Or 506, 510, 815 P2d 1244 *206 (1991). Relying on that constitutional provision, defendant asserts that he was unlawfully seized inside his house. The first issue in an Article I, section 9, seizure analysis is whether the conduct of the police constituted a “seizure” in the constitutional sense. Id. In this case, that approach requires us to determine whether defendant’s compliance with the officer’s order to “come out of his house with his hands up” was a seizure of defendant.
Given the diversity in the possible kinds of encounters between police and citizens, we have been cautious in defining the limits imposed by Article I, section 9, on such encounters. This court previously has identified three distinct categories of police-citizen encounters along the continuum of meetings between police and citizens and has indicated whether those encounters constitute a “seizure” of a person under Article I, section 9, of the Oregon Constitution. First, a police-citizen encounter without any restraint of liberty (e.g., mere conversation, a noncoercive encounter) is not a “seizure” within the meaning of Article I, section 9, and, therefore, requires no justification. Holmes, 311 Or at 407 (citing State v. Warner, 284 Or 147, 161, 585 P2d 681 (1978)). Second, a “seizure” of a person occurs when a police officer temporarily restrains a person’s liberty (a “stop” under ORS 131.605(5)), but such a seizure is so limited in scope and duration that it may be justified by reasonable suspicion of the citizen’s criminal activity.[6] Holmes, 311 Or at 407 (citing State v. Kennedy, 290 Or 493, 498, 624 P2d 99 (1981), and Warner, 284 Or at 161). Third, a “seizure” of a person occurs on an arrest, justified by probable cause to believe that the person has committed a crime. Holmes, 311 Or at 407. “The[se] three categories are guidelines only. They are neither exhaustive nor conclusive as to what police action is a ‘seizure’ of a person.” Id.
In Holmes, 311 Or at 409-10, this court synthesized the holdings of this court’s prior cases to provide the following test for determining whether a person has been seized for purposes of Article I, section 9:
*207 “[A] ‘seizure’ of a person occurs under Article I, section 9, of the Oregon Constitution (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual’s liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances.”
 The determination of whether a police-citizen encounter is a “seizure” within the meaning of Article I, section 9, “is a fact-specific inquiry into the totality of the circumstances.” Id. at 408.
“[An] encounter is a ‘seizure’ of a person only if the officer engages in conduct significantly beyond that accepted in ordinary social intercourse. The pivotal factor is whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself [or herself] in a manner that would be perceived as nonoffensive contact if it had occurred between two ordinary citizens.” Id. at 410.
An application of the foregoing principles in this case compels the conclusion that defendant was “seized” within the meaning of Article I, section 9, of the Oregon Constitution. We need not decide the precise moment at which defendant was seized. It is sufficient to state that he had been seized while in the house, before he came out of his house with his hands up in response to the police order. The police order to defendant was not a request. Rather, it conveyed a message that compliance was required. The order was intended to and did result in a significant restriction of defendant’s liberty or freedom of movement. The encounter between the officers and defendant cannot fairly be characterized as voluntary or consensual; rather, it was confrontational and coercive. The officers engaged in conduct that, in effect, deprived defendant of any choice in the matter. The police had, in effect, announced to defendant that (1) he was not at liberty to go about his business and ignore their order to come out of his house “with his hands up,” and (2) he did not have the right to refuse to comply with that order.
In the encounter with defendant, the police engaged in conduct significantly beyond that accepted in ordinary social intercourse. Stated differently, the police engaged in conduct that would be perceived as an offensive contact if it *208 had occurred between two ordinary citizens. Defendant’s submission to such a show of force and assertion of authority significantly restricted, interfered with, or otherwise deprived him of his liberty or freedom. Moreover, in light of the surrounding circumstances, defendant’s submission to such a show of force and assertion of authority is evidence that he reasonably believed that his liberty or freedom was intentionally and significantly restricted, interfered with, or otherwise deprived, and the facts that we have recited demonstrate that such belief was objectively reasonable in the circumstances. Accordingly, within the meaning of Article I, section 9, of the Oregon Constitution, a seizure of defendant’s person occurred while he still was in his house, and when defendant commenced to comply with the police order.
We now turn to the question of whether that seizure was lawful. In this case, the police did not have a warrant to seize defendant. Nor, as the state concedes, did the police have probable cause to arrest defendant until after he emerged from his house in compliance with the “come-out-of-your-house-with-your-hands-up” order. Moreover, the state conceded at oral argument that there were no exigent circumstances[7] to justify a warrantless seizure of defendant inside his house or entry into defendant’s house to seize him, and none appear from the record. Indeed, the trial court found that the officers “had no reason to go in [defendant’s] house.”
The burden is on the state to establish by a preponderance of the evidence that the warrantless seizure of defendant’s person was reasonable under an exception to the warrant requirement. State v. Olson, 287 Or 157, 165, 598 P2d 670 (1979). See also ORS 133.693(4) (“[w]here the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution”).
*209 A well-established, constitutional principle is that, where there is neither “hot pursuit” nor any other pre-existing, exigent circumstances, police officers with probable cause to arrest a suspect may not make a warrantless and nonconsensual entry into a suspect’s house in order to make a routine felony arrest of the suspect. See Olson, 287 Or at 165 (stating that principle under Article I, section 9, of the Oregon Constitution and holding that the application of ORS 133.235(5)[8] would be an unconstitutional application where there are no exigent circumstances);[9] Payton v. New York, 445 US 573, 100 S.Ct 1371, 63 L Ed 2d 639 (1980) (stating same principle under Fourth Amendment to the Constitution of the United States). In such circumstances, an arrest warrant, based on probable cause, is constitutionally required.[10] Olson, 287 Or at 165. Permitting the police, without a warrant based on probable cause or probable cause plus exigent circumstances, to seize a person inside his house by ordering that person to emerge from his house would be inconsistent with that well-established constitutional principle. See Olson, 287 Or at 164-65 (stating principle).
We recognize that the police had been told that an occupant of the house had a gun. We also are mindful of the dangers inherent in the work of police officers. The potential for violence exists in all confrontations between police and private citizens. However, the mere fact that a person is seen waving a gun on the front porch of a house, standing alone, is *210 not an indicator of criminal activity. The anonymous telephone call appropriately triggered police investigation, but no legitimate part of that investigation ever ripened into either a warrant based on probable cause to believe that defendant had committed a crime or such probable cause plus exigent circumstances. The seizure of defendant was unlawful. All of the evidence against defendant in this case was derived from that seizure.
Having determined that defendant was unlawfully seized, it follows that all the evidence obtained by the officers following defendant’s emergence from his home must be suppressed as the fruits of that unlawful seizure.[11]
The decision of the Court of Appeals and the judgment of the district court are reversed. This case is remanded to the district court for further proceedings.

 Article I, section 9, of the Oregon Constitution provides:
“No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.”

 The Fourth Amendment to the Constitution of the United States, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, Mapp v. Ohio, 367 US 643, 655, 81 S Ct 1684, 6 L Ed 2d 1081 (1961), provides:
“The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.”

 Officer Kahut testified at the suppression hearing that the anonymous telephone caller said that there was a “man waving a gun on the front porch” at a specified address. Officer Willard testified that the anonymous caller reported that there was a “man with a gun walking in and out of a house” at a specified address. In his oral findings, the trial judge said that an anonymous caller reported that there was “a man waving a gun on the front porch.”

 At the suppression hearing, Officer Kahut testified as follows:
“ATTY: And when you arrived, some calls were taking place to get Mr. Dahl out of the home, correct?
“KAHUT: Yes.
“ATTY: And when Mr. Dahl eventually came out of the home, did he come out with his hands up?
“KAHUT: Yes, he did.
“ATTY: And at that time, was he under arrest?
“KAHUT: No, he was not.
“ATTY: Was he ordered to come out with his hands up?
“KAHUT: Yes, he was.”
Officer Hoesley testified:
“ATTY: Would Officer Kahut’s testimony be inaccurate when she said that Mr. Dahl came out of the house ...
“HOESLEY: Yeah, she brought him out of the house like that, yes.
“ATTY: And he was, was it your understanding, he was ordered to come out of the house with his hands up?
“HOESLEY: Yes, he was.
“ATTY: Okay, was he free to go at that time?
"HOESLEY: No, he was not.”

 Portland City Code section 3.20.110 provides in part:
“The police force of the City shall at all times of the day and night within the boundaries of the City preserve the public peace, prevent crime, arrest offenders, protect rights of persons and property, guard the public health, preserve order, * * * and generally obey and enforce all ordinances of the City Council and criminal laws of the State and of the United States.”

 See ORS 131.605 through ORS 131.625 (stating standard for stopping persons by police officers) and ORS 131.605(4) (defining the phrase “reasonably suspects”).

 “An exigent circumstance is a situation that requires the police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect’s escape or the destruction of evidence.” State v. Stevens, 311 Or 119, 126, 806 P2d 92 (1991).

 ORS 133.235(5) provides that, “[i]n order to make an arrest [for certain offenses], a peace officer may enter premises in which the officer has probable cause to believe the person to be arrested to be present.”

 We note that, although the conclusion in State v. Olson was based on “the words of both the Oregon and the United States Constitutions,” there was no separate and definitive analysis under the Oregon Constitution. We now wish to state that that analysis is correct under Oregon constitutional law.

 “If probable cause to arrest is all a police officer needs to make a constitutionally reasonable forced entry into a person’s house to arrest him, it is obvious that there will be little necessity for the officer ever to get a warrant; the requirement for entry without a warrant and for getting a warrant would be the same. If an officer does not have to have a warrant to force an entry into the house of a person for his arrest, the officer surely does not have to have one to enter any place else for that purpose. Yet the constitutional provisions obviously must contemplate situations in which a warrant is required.” Olson, 287 Or at 162.

 Our disposition of this case under Oregon law makes it unnecessary to address defendant’s Fourth Amendment claims.