Argued and submitted June 17, reversed and remanded November 3, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JONATHAN PAUL FREDRICKS,
*Defendant-Appellant.*

Multnomah County Circuit Court
080432027; A140764

243 P3d 97

George W. Kelly argued the cause and filed the brief for appellant.

Leigh A. Salmon argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Robert M. Atkinson, Senior Assistant Attorney General.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant was convicted, following a trial on stipulated facts, of a variety of drug offenses after the trial court denied his motion to suppress evidence found when a police officer entered defendant's motel room in response to a 9-1-1 call reporting a loud argument.[1] Defendant argues that the trial court erred in concluding that the officer's entry into his motel room was authorized by the community caretaking statute, ORS 133.033,[2] and that he was entitled to suppression of the subsequently discovered evidence under Article I, section 9, of the Oregon Constitution.[3] The state argues that defendant failed to preserve his argument under the Oregon Constitution and that the officer's entry was authorized by ORS 133.033 because the officer reasonably believed that

---

[1] Defendant was convicted of felony unlawful delivery of methamphetamine, ORS 485.890(2); felony unlawful possession of methamphetamine, ORS 475.894; felony unlawful possession of cocaine, ORS 475.884; and felony unlawful possession of a controlled substance schedule two, ORS 475.840(3)(b).

[2] ORS 133.033 provides:

"(1) Except as otherwise expressly prohibited by law, any peace officer of this state, as defined in ORS 133.005, is authorized to perform community caretaking functions.

"(2) As used in this section, 'community caretaking functions' means any lawful acts that are inherent in the duty of the peace officer to serve and protect the public. 'Community caretaking function' includes, but is not limited to:

"(a) The right to enter or remain upon the premises of another if it reasonably appears to be necessary to:

"(A) Prevent serious harm to any person or property;

"(B) Render aid to injured or ill persons; or

"(C) Locate missing persons.

"(b) The right to stop or redirect traffic or aid motorists or other persons when such action reasonably appears to be necessary to:

"(A) Prevent serious harm to any person or property;

"(B) Render aid to injured or ill persons; or

"(C) Locate missing persons.

"(3) Nothing contained in this section shall be construed to limit the authority of a peace officer that is inherent in the office or that is granted by any other provision of law."

[3] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

someone in defendant's motel room was at risk of domestic violence. We reject the state's preservation argument, and we conclude that the evidence discovered after the officer entered defendant's motel room should have been suppressed because that entry was not authorized under the emergency aid exception to the warrant requirement of Article I, section 9. Consequently, we reverse.

■　　We take the pertinent facts from our review of the record in light of the trial court's express determination that the officer's testimony at the suppression hearing was credible and defendant's was not.[4] Officer Walker received a call notifying him of a possible domestic disturbance taking place at a motel. A dispatcher notified Walker that the call was made either by neighbors or the manager of the motel. Walker arrived at the motel within "a few minutes" and spoke with three of defendant's neighbors, "who said they had heard a loud disturbance inside the motel room."

Walker then stood outside the door of defendant's motel room and waited for his cover officers to arrive. Walker stood outside the door for two or three minutes, and, during that time, he could hear a male voice and a female voice, engaged in a "loud argument." Walker testified that

"[a]t that particular time my biggest concern * * * [was] that * * * it wasn't deescalating at all. It was just staying at this level and, like I said, it was just continuing, and so I had no clue at that point if anybody was injured or anything like that."

After his cover officers arrived, Walker knocked on the door and was immediately met by defendant, who opened the door. Walker told defendant "this is what's going on. I'm here,* * * got a report from neighbors that * * * basically it's a possible domestic disturbance. I need to come into the room and make sure everybody's okay." Walker testified that defendant appeared "fairly calm," and Walker asked defendant if he would "mind stepping outside really quick." Defendant complied, and Walker entered the motel room.

---

[4] The trial court made few findings of fact, and we are bound by those findings to the extent that they are supported by evidence in the record. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991).

Defendant's female companion, J, was inside the room, and J did not appear to be injured. Walker testified that he smelled marijuana smoke when he entered the room. Walker asked J whether she had been assaulted by defendant; she said that she had not, but that she and defendant had been having a loud argument. Walker told J about the complaints from the neighbors regarding the argument and told her "you guys need to keep it down." Walker then told J that he could smell marijuana, and asked her if "[they had] illegal narcotics in the room." J said no. Walker asked her for consent to search the room, and J deferred to defendant. Walker then stepped outside the room, where defendant was sitting with Walker's cover officer, and asked defendant for consent to search the room. Defendant said, "Go ahead. You're not going to find anything." Walker then searched the room, finding the controlled substances at issue here.

Defendant filed a motion to suppress the evidence that Walker found in the search. Defendant argued that "the search of defendant's [m]otel room was conducted without a warrant and without a valid exception to the warrant requirement in violation of Article I, section 9 of the Oregon Constitution and the Fourth Amendment to the U.S. Constitution." At the hearing on the motion to suppress, the state argued that Walker's entry was justified under ORS 133.033, the community caretaking statute. Defendant replied:

"[T]he officer says * * * that he's responding to a loud disturbance, that three neighbors are concerned about a loud disturbance, and there's nothing more than a loud disturbance based on what the officer said as well as what both suspects say in this entire investigation. I think there was never a reason for—especially under ORS 133.033, for Officer Walker to enter without a warrant.

"THE COURT:   You think the facts don't support a conclusion under ORS 133.033, that it was reasonable for the officer to go in[?]

"[COUNSEL]:   Right."

According to defendant, "there was [no] indication that anyone was hurt, harmed, or otherwise in need of aid, and that there's no evidence that—I don't think this is an

issue, but that he entered in order to prevent harm." Defendant acknowledged Walker's testimony regarding his training and experience with verbal arguments, but pointed out that "in this specific case the reasonable and articulable facts don't point to anything other than a verbal disturbance, so without reasonable suspicion of a crime, he entered, and without * * * a reasonable or necessary reason to enter the room, he entered." Defendant argued that he had been unlawfully stopped when Walker asked him to step out of the room and that his subsequent consent to the search of the room was invalid because of that prior illegality. The trial court pressed defendant on that point:

"THE COURT: Now, what does that have to do with the entry of the officer into the room pursuant to ORS 133.033 if the facts support that? I appreciate you don't think they do but the State's arguing that they do and if the facts support the reasonableness of the officer going into the room, is there any kind of—how are those things tied together, or not, those two separate things? One is an unlawful stop of your client, which is your argument, and the exploitation of that and the request to consent versus the officer being in the room, and if lawful, which you disagree with, but if lawful and smelling the smell of marijuana and then asking for consent?

"[COUNSEL]: That's the nexus.

"THE COURT: All right. Go ahead. Okay. So your client wouldn't have been there for the cop to ask if he hadn't been unlawfully stopped, even though the cop had a right to be there. I appreciate you don't think he did, but if the cop had a right to be there, your client wouldn't have been there to ask.

"[COUNSEL]: My client would have been in a different position while asked.

"THE COURT: There we go. I'm with you. I understand your argument."

In rebuttal, the state reiterated its argument that Walker "acted reasonably within the bounds of the statute, but it wasn't just a general—he didn't say, 'I thought there might be.' It's like, 'I thought there [might be]'—'what was your specific concern?' 'That someone was injured inside.' "

The court then denied defendant's motion to suppress, explaining:

> "I find the facts consistent with the testimony of the police officer, whom I find to be credible. I find defendant's testimony to be less than credible because of the contradictions * * *
>
> "So the facts are consistent with the officer's testimony. The defendant consented to the search of the room twice. The defendant consented before the officer searched anything, at all, and the officer—I'm kind of getting myself out of order.
>
> "First of all, the officer's entry into the room was consistent with ORS 133.033(2), in that—I mean, it was reasonable for the officer to think that he might need to render aid to an injured person because of the information that had been provided to him. That's not a probable cause standard, that's [a] reasonableness standard, so the officer was lawfully in the room. Although defendant was certainly not free to leave at that point and there was a stop of the defendant, the stop was reasonable, given the circumstances. * * *
>
> "The defendant consented orally to the search of the room. The defendant later reaffirmed his consent * * *[.] So I'm denying the Motion to Suppress."

As noted, defendant was subsequently convicted of a variety of drug offenses. This appeal followed.

■ The state first contends that defendant failed to preserve his argument on appeal under Article I, section 9. According to the state, "[i]n the trial court * * * defendant relied exclusively on the statute and made no reference whatsoever [to] constitutional limits on an emergency-aid entry or to any failure to establish that the emergency in question must be life-threatening." It follows, the state concludes, "[h]aving made an exclusively statutory argument in the trial court, defendant did not preserve a constitutional issue for appeal." The state concedes that, if defendant did preserve a constitutional claim, the evidence available to Walker at the time he entered defendant's room "did not demonstrate that anyone's life was in immediate danger."

■■   We reject the state's contention that the constitutional and statutory components of the "emergency aid" doctrine can be so cleanly separated. ORS 133.033 authorizes an officer to engage in "lawful acts," and, "[w]hatever the meaning of 'lawful acts' in the context of ORS 133.033, that meaning must be consonant with the state and federal constitutions." *State v. Dahl*, 323 Or 199, 205, 915 P2d 979 (1996). As we recently explained:

> "ORS 133.033 does not independently establish an exception to the warrant requirement. Rather, it provides legislative authorization for (among other things) a particular class of searches, subject to many of the same constitutional constraints that operate to limit other searches, including the warrant requirement. A lawful community caretaking search, in other words, must first be within the universe of police action described in ORS 133.033, and then it must also 'fall within one of the constitutional exceptions to the warrant requirement.' "

*State v. Martin*, 222 Or App 138, 146, 193 P3d 993 (2008), *rev den*, 345 Or 690 (2009) (quoting *State v. Goodall*, 219 Or App 325, 334, 183 P3d 199 (2008)). In *Martin*, we concluded that, because an officer's entry into the defendant's home did not satisfy the requirements of the emergency aid doctrine under Article I, section 9, it was unnecessary to decide whether that entry would be lawful under ORS 133.033. As we explained,

> "[o]rdinarily, we would undertake the statutory analysis before considering constitutional questions under Article I, section 9. In the present case, however, judicial efficiency requires a departure from that practice. The statutory question—whether the officers' entry in this case was authorized by ORS 133.033—is a close and difficult one. * * *
>
> "* * * * *
>
> "As did the Supreme Court in another case involving the scope of ORS 133.033, we move directly to the constitutional question in order to avoid a 'topic [that] would take us afield needlessly.' *Dahl*, 323 Or at 205. That constitutional question is whether the officers' entry falls within the 'emergency aid' exception to the warrant requirement. The

trial court ruled that it did not and, as we explain below, we agree."

*Martin*, 222 Or App at 146-47 (footnote omitted). We employed the same analysis in *State v. Salisbury*, 223 Or App 516, 523, 196 P3d 1017 (2008), and concluded that, "even if the state is able to satisfy the requirements of ORS 133.033, it must also satisfy the requirements of the emergency aid doctrine." Indeed, contrary to the state's position that an argument based on ORS 133.033 necessarily does not include an argument under Article I, section 9, we have held that it is error for a trial court to rely solely on ORS 133.033 in upholding a warrantless search, because that statute does not establish an exception to the constitutional warrant requirement. *State v. Snyder*, 227 Or App 544, 552, 206 P3d 1083 (2009). Thus, the determination that a warrantless search is authorized under ORS 133.033 implicitly incorporates a determination by the trial court that the requirements of the emergency aid doctrine under Article I, section 9, have been met. Without such a determination, the search is not a "lawful act," which is the only kind of act authorized by ORS 133.033.

Moreover, defendant expressly argued that the officer's warrantless entry violated Article I, section 9, and that the officer had failed to present "reasonable and articulable facts" pointing "to anything other than a verbal disturbance" and that the facts did not satisfy the statutory requirement that there be an emergency. *Cf. Snyder*, 227 Or App at 544 (rejecting the state's argument that the defendant failed to preserve his statutory claim of error by noting that he had specifically argued that the state had failed to prove that an emergency existed under Article I, section 9). The trial court was fully aware that defendant was making an argument under the statute and, as we have explained, that argument necessarily required the trial court to make a determination that the officer's warrantless search also fell within an exception to the warrant requirement of Article I, section 9. We conclude that defendant adequately preserved his argument under Article I, section 9.

As noted, the state concedes that the evidence available to Walker at the time he entered defendant's room did not demonstrate that a life was in immediate danger. We

agree. In *State v. Follett*, 115 Or App 672, 680, 840 P2d 1298 (1992), *rev den*, 317 Or 163 (1993), we held that the emergency aid doctrine applies if four conditions are met:

"(1)  The police must have reasonable grounds to believe that there is an emergency and an immediate need for their assistance for the protection of life.

"(2)  The emergency must be a true emergency—the officer's good faith belief alone is insufficient.

"(3)  The search must not be primarily motivated by an intent to arrest or to seize evidence.

"(4)  The officer must reasonably suspect that the area or place to be searched is associated with the emergency and that, by making a warrantless entry, the officer will discover something that will alleviate the emergency."

(Footnote omitted.) Moreover, in *State v. Burdick*, 209 Or App 575, 581, 149 P3d 190 (2006), we explained:

"[A] 'true emergency' exists if there are reliable, objective indicia of a potential victim of a dangerous circumstance or a potential perpetrator of a dangerous act. Suspicious circumstances or 'gut instinct' are insufficient. The existence of an identifiable victim or perpetrator is significant because whether an emergency exists depends on whether immediate action is required ('something that will alleviate the emergency'), which, in turn, depends on the relationship between the gravity of the harm to be prevented and the probability that the harm will occur if action is not taken."

Here, the evidence in the record shows only that Walker overheard a loud argument that, in his words, was "not deescalating." The record does not contain any other objective indicia of a "potential victim of a dangerous circumstance or a potential perpetrator of a dangerous act." *Id.* Where police overhear a loud argument, unaccompanied by any sounds of "physical struggle or an indication that an act of violence ha[s] occured," a warrantless entry into a defendant's residence is not authorized by the emergency aid

doctrine. *Salisbury*, 223 Or App at 524.[5] It follows that the trial court erred in denying defendant's motion to suppress.[6]

Reversed and remanded.

---

[5] We decline the state's invitation in this case to reconsider our holding in *Follett* that application of the emergency aid doctrine requires the police to have reasonable grounds to believe that there is an immediate need for their assistance for the protection of life. Nor is it necessary to consider whether this court's own post-*Follett* decisions have retreated from that requirement because, in any event, the evidence in this case does not contain objective indicia of a potential victim of a dangerous circumstance or a potential perpetrator of a dangerous act.

[6] We reject without discussion the state's argument that, even if the warrantless entry was unlawful, the officer did not exploit the unlawful entry to obtain defendant's consent to search the room. *See State v. Hall*, 339 Or 7, 115 P3d 908 (2005).